UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | No. 3:19-CR-00439-X |
| | § | |
| BOBBI STROUD; BRUCE STROUD; | § | |
| AND KENRIC GRIFFIN. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are seventeen pretrial motions.  For the reasons explained below, the Court **DENIES** motions 71, 72, 73, 74, 76, 78, 79, 83, 110; **GRANTS** motion 80; and **DISMISSES** motions 70, 81, 82, and 99 **AS MOOT**.  The Court **GRANTS IN PART** motion 85 and will hold a suppression hearing at the pretrial conference.  The Court will also address motion 63, 77, and the Government's motion in limine at the pretrial conference.

### I. Factual Background

The defendants were indicted in an eight-count superseding indictment with conspiracy to defraud the United States and to offer and pay, solicit, and receive illegal health care kickbacks in violation of 18 U.S.C. § 371 and seven counts of offering and paying illegal health care kickbacks in violation of 42 U.S.C. § 1320a-7b(b)(2)(A) and 18 U.S.C. § 2.

## II. Analysis

### A.  Rule 404(b) Evidence

The Court first addresses motions regarding Rule 404(b) evidence [Doc. Nos. 70 and 81].  Griffin and the Strouds move for disclosure of all 404(b) evidence the Government intends to offer at trial and the purposes for which it seeks to admit such evidence.  Griffin also requests a hearing on the admissibility of such evidence and separately filed a motion in limine seeking to exclude all references to any uncharged acts of misconduct until a hearing has been held outside the presence of the jury to determine the admissibility of the evidence. [Doc. No. 77].  In response, the Government filed a Notice of Intent to Offer Evidence under Federal Rule of Evidence 404(b) and Unopposed Motion in Limine to Determine Admissibility.  [Doc. No. 91].

Federal Rule of Evidence 404(b) requires the Government to "provide reasonable notice" of any evidence of other crimes, wrongs, or acts it intends to offer at trial as well as the "permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose."  Because the Government has provided the defendants with its notice of the Rule 404(b) evidence it intends to introduce at trial and the purpose for which it intends to use such evidence, the Court **DISMISSES AS MOOT** the motions for disclosure.

The Court also **DENIES** Griffin's request for a hearing.[1]  However, the Court will postpone ruling on the motions in limine and will address each parties' objections at the pretrial conference.

## B. Disclosure of Plea Agreements and Grants of Immunity

Griffin next moves for an order requiring the Government to disclose information regarding plea bargains and grants of immunity to Government witnesses.  [Doc. No. 71].  Griffin requests drafts of plea papers, drafts of proposed reports regarding proffer sessions, or contemporaneous notes taken during proffer sessions.  Griffin contends that he is entitled to discover this material insofar as it contains any statement made by a cooperating witness that is materially inconsistent with later statements by the witness.

The Government responds that it has provided and will continue to provide plea agreements and proffer letters for all testifying witnesses that the Government will or may call at trial.  However, as to the request for interview reports, the Government contends that this is beyond its discovery obligation.

The Government must disclose any notes to the extent required by *Brady, Giglio*, and any material that qualifies as a statement under the Jencks Act or Rule 26.2(f).[2]  But the motion is **DENIED** insofar as it requests information beyond the Government's obligations under these authorities.

---

[1] *See United States v. Rizkallah*, No. 3:12-CR-318-D 9, 2014 WL 6633079, at *1 (N.D. Tex. Nov. 24, 2014) (Fitzwater, J.) ("A pretrial hearing is not required, and a ruling on the admissibility of Rule 404(b) evidence often requires that the court assess proof offered, or positions taken, by a party during the trial itself.").

[2] *See United States v. Fleifel*, No. 3:12-CR-318-D 3, 2014 WL 6633049, at *3 (N.D. Tex. Nov. 24, 2014) (Fitzwater, J.).

3

### C. Motions for a *James* Hearing

The Court next considers the defendants' motions for a *James* hearing. [Doc. Nos. 74 and 83]. The Government opposes the motions on the grounds that a *James* hearing would result in a separate mini trial prior to the jury trial. The Court agrees and **DENIES** the defendants' motions.

The admissibility of coconspirator statements will be determined at trial. The Court is aware of its obligation to comply with Rule 801(d)(2)(E) and to make findings before admitting coconspirator statements.[3] But a *James* hearing is not mandatory, and in this area, the Court has broad discretion.[4] Although the Court must "whenever reasonably practicable, require the showing of a conspiracy and of the connection of the defendant with it [pursuant to Rule 801(d)(2)(E)] before admitting declarations of a coconspirator," where that is not reasonably practicable, the Court may postpone ruling on a *James* motion "until those findings can appropriately be made."[5] The Court will follow these requirements at trial.

### D. Jencks Act Material

The Court next turns to Griffin's motions for early production of witness statements and Jencks Act material [Doc. Nos. 72 and 76] and the Strouds' request for witness statements in their discovery motion [Doc. No. 78]. Griffin requests all statements and reports under the Jencks Act to be produced one week before trial, and requests all handwritten notes, records, or memoranda of all law enforcement

---

[3] *United States v. Fragoso*, 978 F.2d 896, 900 (5th Cir. 1992).

[4] *Id.*

[5] *Id.*

and government agents involved in the investigation of this action and the facts that led to it, in accordance with 18 U.S.C. § 3500(b).  The Strouds request all witness statements at least 14 days before trial as well as prior testimony, grand jury testimony, prior written statements, and reports or notes relating to the witness statement.

The Government responds that these requests exceed its discovery obligations and that the Government has and will continue to go above and beyond its obligations by providing the defendants, in advance of the trial to the extent practicable, with interview reports for witnesses it anticipates calling at trial.  The Government states that it has obtained or will obtain transcripts of all witnesses it intends to call who testified before the grand jury and will provide those transcripts as required by the Jencks Act.

Under the Jencks Act, the Government cannot be compelled to disclose a witness statement until after the witness has testified on direct examination.[6] Further, interview reports and agent notes are not discoverable under Rule 16 or the Act.[7]  Therefore, the Court **DENIES** the defendants' requests that the Government produce this material two weeks before trial and expects the Government to continue to comply with its obligations under the Jencks Act.

---

[6] 18 U.S.C. § 3500(b); FED. R. CRIM. P. 26.2(a).

[7] *See United States v. Judon*, 581 F.2d 553, 555 (5th Cir. 1978) (citing *Palermo v. United States*, 360 U.S. 343, 350 (1959)).

## E. *Brady* and *Giglio* Material

Next the defendants move for the Government to produce exculpatory evidence under *Brady v. Maryland*[8] and evidence that would impeach the Government's witnesses under *Giglio v. United States*.[9]  [Doc. Nos. 73 and 79].[10]  The defendants list numerous sub-categories of information they seek.  The Government responds that the defendants' requests either have been fulfilled, will continue to be fulfilled, or go beyond the Government's discovery obligations.

*Brady v. Maryland* requires the Government to produce evidence favorable to the defendant that is material to guilt or punishment.[11]  This includes impeachment evidence and exculpatory evidence.[12]  However, "the prosecutor is not required to deliver his entire file to defense counsel but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial."[13]  Moreover, "[a]s a general rule, the government is under no duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence."[14]  Thus, *Brady* "does not establish a broad discovery rule; rather, it defines the Government's minimum duty under the due process clause to ensure a fair trial."[15]  While *Brady* does not

---

[8] 373 U.S. 83 (1963).

[9] 405 U.S. 150 (1972).

[10] The Court previously granted the motion at Doc. No. 79 because the defendants represented that the Government was unopposed; however, the Government is opposed and filed a response.

[11] *Brady*, 373 U.S. at 87.

[12] *United States v. Bagley*, 473 U.S. 667, 676 (1985).

[13] *Id.* at 675.

[14] *United States v. Skilling*, 554 F.3d 529, 576 (5th Cir. 2009), *vacated in part on other grounds*, 561 U.S. 358 (2010).

[15] *United States v. McKinney*, 758 F.2d 1036, 1049 (5th Cir. 1985).

mandate the Government disclose all *Brady* material before trial, it must disclose "the material in time to put it to effective use at trial."[16]

So, to the extent that the defendants request more than *Brady* requires, the motions are **DENIED**.  The Court expects the Government to continue to comply with its obligations under *Brady*, *Giglio*, and their progeny.

### F. Motion for Discovery and Inspection

The Strouds move for discovery of the following items: statements made by the defendants; any documents the government intends to use at trial; co-conspirator and co-defendant witness statements including video and audio recordings; identity of informants; government communications to the defendants; and statements of individuals who will not be witnesses.  [Doc. No. 78].

The Government responds that to the extent that the Strouds seek their own statements or any other written or recorded witness statement, the Government has complied and will continue to comply with its discovery obligations.  "[S]everal courts have held that the fact that a coconspirator's statements are viewed as statements by the defendant under [Rule 801(d)(2)(E)] does not make them discoverable under Rule 16(a)(1)(A) or (B)."[17]  Further, the Government states that it has fulfilled its Jencks, *Brady*, and *Giglio* obligations in this case.  To the extent that the Strouds request information beyond what the Government is required to produce under these

---

[16] *Id.* at 1050.

[17] *United States v. Hansen*, 2005 WL 1206868, at *3 (N.D. Tex. May 18, 2005) (Fitzwater, J.) (citing *United States v. Tarantino*, 846 F.2d 1384, 1418 (D.C. Cir. 1988)).

authorities, the motion is **DENIED**.  Moreover, the Court's scheduling order requires the Government to produce witness lists and exhibit lists by April 8, 2022.

However, the Government did not indicate whether there are informants involved in this case.  Accordingly, the Court **ORDERS** the Government to notify the Court by 5pm central time on Wednesday, April 13, 2022, whether there are any informants involved in this case.  If there are, it must disclose to the Court *ex parte* their identities and the Government's reasons for nondisclosure.[18]

### G. *In Camera* Review of Witnesses' Presentence Reports

The Strouds request that the Court conduct an *in camera* review of any Government witnesses' presentence reports for *Brady* and *Giglio* material under *United States v. Carreon*.[19] [Doc. No. 80]. The Government does not oppose the request.   Therefore, the Court **GRANTS** this motion.   The Court orders the Government to file *ex parte* with the Court any such presentence reports and addendums that currently exist by Monday, April 11, 2022, at 5pm central time.

### H.   Motion for Government Agents' Notes

The defendants move to require all Government experts and law enforcement officers who investigated the charges in this case to retain and preserve all rough notes taken as part of their investigation, whether or not the notes were incorporated in official records.   [Doc. Nos. 82 and 99]. The Government does not oppose the

---

[18] *See United States v. Robinson*, No. 3:05-CR-062-D, 2006 WL 468298, at *2 (N.D. Tex. Feb. 28, 2006) (Fitzwater, J.) (citing *United States v. De Los Santos*, 810 F.2d 1326, 1331 (5th Cir.1987)).

[19] 11 F.3d 1225, 1238 (5th Cir. 1994).

defendants' request to preserve agents' rough interview notes.  Therefore, the Court **DISMISSES** the motion **AS MOOT**.

## I.  Motion to Suppress

The Strouds move to suppress e-mail evidence and request an evidentiary hearing on the motion.  [Doc. No. 85].  The Strouds challenge the e-mail evidence on three grounds: (1) the e-mail evidence was obtained as a result of an unlawful search and seizure of their e-mail accounts; (2) the affidavit fails to establish a sufficient nexus between the Bobbi Stroud e-mail account and criminal activity; (3) the search warrants are overbroad and exceed the scope of the probable cause contained within the affidavit.  Specifically, they contend that the search warrants contained false statements and omitted facts.

The Court **GRANTS** the motion **IN PART**.  The Court grants the motion for a hearing and will hold the suppression hearing at the pretrial conference.  Because the Government's motion for disclosure of e-mail communications [Doc. No. 63] is dependent on the outcome of the suppression hearing, the Court will address the motion at the pretrial conference.

## J. Motion to Exclude

Finally, Griffin filed a motion in limine to exclude the testimony of Stephen Quindoza on the ground that he is neither a proper lay witness nor a proper expert witness [Doc. No. 110].  Quindoza works for SafeGuard Services, LLC, a Medicare contractor.  "[He] has taught compliance with Medicare's rules and regulations, personally investigated fraud, waste, and abuse in the Medicare Program, and

personally worked in the processing and payment of Medicare claims submitted by a wide variety of providers."[20]  The Government seeks to admit Quindoza's testimony to "discuss the facts regarding the Medicare program and its rules and regulations that are directly relevant to the charges in the superseding indictment."[21]  This includes "Medicare's conditions of participation and payment, including a provider's requirement to certify that it understands that the payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with, among other things, the Anti-Kickback Statute (AKS)."[22]  He will also "summarize the Medicare claims data relating to the scheme that is alleged in the superseding indictment. Specifically, it is anticipated that Mr. Quindoza will testify about Medicare claims submitted by the defendant through their respective [companies]."[23]  Griffin argues that Quindoza is not a proper lay witness because he does not have personal knowledge of the facts of this case and that he is not a proper expert witness because the Government did not designate him as such.

It is not clear to the Court that the Quindoza is not an expert witness.  The Government compares Quindoza's testimony to that of insurance company representatives in *United States v. Moparty* where the Fifth Circuit held that the representatives' testimony was not expert in nature because the testimony related "to the procedures, policy terms, and fraud prevention protections at each insurance

---

[20] Doc. No. 96 at 2.

[21] Doc. No. 115 at 56.

[22] Doc. No. 96 at 23.

[23] *Id*. at 4.

company."[24]  But there, unlike here, the representatives testified to the policies and procedures of the companies they worked for.[25]  Accordingly, their testimony was not expert in nature because "Rule 701 does not exclude testimony by corporate officers or business owners on matters that relate to their business affairs, such as industry practices and pricing."[26]  The Court finds this distinction significant and finds the Eleventh Circuit's reasoning involving the same witness persuasive.[27]

The Court grants the Government's request for an opportunity to qualify Quindoza as an expert witness.  The Government must make its Rule 26 expert disclosures by 5pm central time on April 12, 2022.

### III. Conclusion

For the reasons explained above, the Court **DENIES** motions 71, 72, 73, 74, 76, 78, 79, 83, 110; **GRANTS** motion 80; and **DISMISSES** motions 70, 81, 82, and 99 **AS MOOT**.  The Court **GRANTS IN PART** motion 85 and will hold a suppression

---

[24] *United States v. Moparty*, 11 F.4th 280, 295 (5th Cir. 2021).

[25] *Id.* ("[T]he Blue Cross Blue Shield witness addressed how the company would handle various situations, how it interpreted terms and policies, and how their policies compared to those of the industry. Similarly, the Aetna representative's testimony focused on Aetna's policies and practices.").

[26] *Id.*

[27] *United States v. Willner*, 795 F.3d 1297, 1318 (11th Cir. 2015) (holding that the district court erred in allowing Quindoza to testify as a non-expert on similar issues because he "gave expert testimony but had not been disclosed as an expert. Quindoza is a Medicare fraud investigation educator. He is not an employee of Medicare, but works for a private contractor that investigates Medicare fraud. He testified in the form of opinions on a number of issues involving how Medicare functions and what Medicare would do in a number of hypothetical circumstances. This testimony was 'based on scientific, technical, or other specialized knowledge within the scope of Rule 702 . . . .'").  The Court notes that the Government pointed to a number of cases where Medicare contractors were apparently permitted to testify as non-experts, but it points to no orders or opinions directly addressing the question of whether these contractors should be designated as experts.

hearing at the pretrial conference.  The Court will also address motions 63, 77, and the Government's motion in limine at the pretrial conference.

**IT IS SO ORDERED** this 8th day of April, 2022.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE